45 C.C.P.A. (Patents).

## Application of William K. VAN ORMER.

### Patent Appeal No. 6364.

United States Court of Customs and Patent Appeals.
June 18, 1958.

William H. Webb, Washington, D. C. (Donald A. Gardiner, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, and RICH, Associate Judges.

JOHNSON, Chief Judge.

This is an appeal from a decision of the Patent Office Board of Appeals rejecting as unpatentable over the prior art claims 46 through 49 and 52 through 54, in appellant's application No. 238,712, filed July 26, 1951, for "Supporting Devices for Coated Abrasive Products." Claims 50, 51, 55 and 56 were withdrawn from further consideration as not readable on the elected species and are thus not before us on this appeal.

Claim 46 is illustrative of the appealed claims and reads as follows:

"46. In an abrading machine, the combination of a flexible abrading ele-

ment of the coated abrasive belt type, a contact wheel for supporting the abrading element against a workpiece brought into contact with the abrading element, said contact wheel having a monolithic rim structure embodying therein a serrated peripheral supporting surface comprising a plurality of axially diagonal lands and grooves disposed at an angle of from about 10° to 85° from the axial direction of said contact wheel, each of said lands having in lateral cross-sectional relief a steeply pitched leading side face and a more gradually sloped trailing face, said serrations being of such size and depth as to increase materially the cutting action of the flexible abrading element, and means for supporting and moving the flexible abrading element over the rim of the contact wheel in contact with said serrated peripheral supporting surface."

The appealed claims are directed to the combination, in an abrading machine, of a flexible abrading element, a contact wheel for supporting the abrading element against the workpiece to be abraded and a means for supporting and moving the flexible abrading element over the contact wheel. The essence of applicant's alleged invention resides in the specific structure of the contact wheel. Broadly speaking, applicant's contact wheel resembles a gear, with teeth referred to by applicant as "lands" and the spaces between the "lands" being referred to as "grooves." The "lands" and "grooves" are diagonally disposed to the axis of the wheel at an angle of from 10° to 85°. In cross section, the "lands" have a "steeply pitched leading side face and a more gradually sloped trailing face," or "a rake angle [1] of 0° to 15°" and "a clearance angle [2] of 10° to 85°."

In one embodiment, the rim of the wheel is constructed of yieldable material, such as rubber. The specification indicates that various ratios of land to groove area may be used, ranging from "somewhat under 1:1 to an extreme condition under which the land is of practically zero or line width at the peripheral face of the land." The rim structure of applicant's contact wheel is described in each of the appealed claims as "monolithic." [3]

The references relied upon are:

Herchenrider 2,162,279 June 13, 1939; McVey 2,581,270 Jan. 1, 1952; Ross 431,997 July 8, 1890.

McVey discloses the same general system as does applicant, viz.,—the combination, in an abrading machine, of a flexible abrading element, a contact wheel for supporting the abrading element against the workpiece to be abraded and a means for supporting and moving the flexible abrading element over the contact wheel. McVey's contact wheel consists of a centrally disposed hub with a circular plate bolted to each side of the hub (to serve as the sides of the wheel). A plurality of axially disposed back-up bars are removably inserted between the plates around the periphery thereof. Each bar consists of a hard metal core with a resilient covering, such as rubber or plastic. Each bar is rectangular in cross-section except for one of the short sides which is shown in the drawings as being beveled for about two-thirds of its length at an angle of approximately 10°–15°. In at least one embodiment, the edge containing the beveled surface is the portion of the bar which extends beyond the periphery of the wheel and which comes in contact with the flexible abrading element. McVey discloses that the spaces between the

1. The "rake" angle is described by applicant as the angle between the leading side of a "land" and the radial line of the wheel.

2. The "clearance" angle is described as the angle between the line of the trailing face of a "land" and a line tangential to the periphery of the wheel.

3. Throughout the prosecution of this case, applicant has referred to his rim structure as "monolithic." It is obvious that applicant does not intend this word to be defined literally (monolithic is the adjective form of the noun "monolith," which literally means "a single stone") but rather, intends it to be synonymous with "integral." We have, for purposes of this appeal, used it in the latter sense.

bars may be varied but that "a more definite striking, or saw-tooth, action" is obtained by increasing the space between the bars. McVey states that the bars may be axially disposed or may be helically disposed (the latter embodiment serves to prevent "chattering" of the flexible abrasive belt).

Both Ross and Herchenrider disclose contact wheel structures. Each was cited generally by the examiner to show a contact wheel with a "monolithic" rim structure. The board additionally referred to Ross and Herchenrider as showing the angled relationship of the teeth or "lands" to the axis of the wheel within the range specified in applicant's claims.

Each of the claims on appeal was rejected as unpatentable over McVey in view of Ross or Herchenrider and, alternatively, as unpatentable over Ross or Herchenrider in view of McVey. It was the board's and the examiner's opinion that, except for the "monolithic" rim structure, the structure defined in each of the claims is shown by McVey. Ross and Herchenrider were applied to show such a "monolithic" rim structure.

Applicant urges that the decision of the board is erroneous in numerous particulars. The most significant of these appears to be the argument that each of applicant's claims recites "a steeply pitched leading side face and a more gradually sloped trailing face" whereas McVey is said to have steeply pitched leading side and trailing faces with only the *top* of each of McVey's bars sloping. Two affidavits have been introduced into the record in an attempt to demonstrate the advantage of applicant's device over prior art devices.

For the reasons to follow, we are of the opinion that the board's decision was correct and must be affirmed.

Since all of the claims are basically modifications of claim 46, we will discuss that claim first. There is no question but that McVey discloses the general combination claimed. And though McVey does not disclose a "monolithic" structure, it would be obvious, in view of Ross or Herchenrider, to use an integral structure in lieu of McVey's adjustable structure if such were desired.

McVey does not specify the specific angle at which his bars are disposed relative to the axis of the wheel (in the helical embodiment). He does state that the purpose of the axial displacement is to prevent chattering, which appears to be the same purpose for which applicant displaces his "lands." Not only has applicant stated in his specification and through counsel at oral argument that such angular displacement is conventional, but Ross and Herchenrider would seem to be additional testimony to this fact. The broad range of 10° to 85° indicates a lack of criticality in the particular angle of displacement which, we think would be a matter of routine experimentation for the skilled artisan.

The limitation in claim 46 that the serrations are "of such size and depth as to increase materially the cutting action of the flexible abrading element" is manifestly without patentable significance. The Solicitor aptly characterized this phrase as the "unbased comparative," for there is no indication as to what the datum is from which the increase will be measured. Furthermore, it would seem to be an obviously desirable characteristic of any contact wheel similar to applicant's or McVey's and therefore cannot serve to distinguish from McVey. In re Jewett, 247 F.2d 953, 45 C.C.P.A., Patents, 714.

Appellant argues that McVey does not show a "land and groove" structure, but rather shows elements (the bars) which "are *completely spaced from each other* and, instead of there being a *groove* between the elements, there is a complete void extending downwardly to the hub of the wheel." (Emphasis quoted.) In our opinion, this is a distinction without a difference. True, McVey's "voids" are not, technically speaking, "grooves." It would appear, however, that the bars of McVey are fully equivalent to the "lands" of applicant and that McVey's voids correspond to applicant's grooves. We have been shown no reason why they should

not be treated as equivalents. They do the same thing in the same way and, as far as we can determine from the record, produce the same result (setting aside, for the moment, the effect of the particular configuration of the lands and grooves).

The essence of applicant's case resides in his last argument. As aforesaid, he argues that McVey doesn't show the "steeply pitched leading side face and a more gradually sloped trailing face" of his bars, a limitation present in each of applicant's claims; that McVey has a steeply pitched trailing face, at 90° to the horizontal; and that the fact that McVey slopes the *top surface* of his bars is immaterial to the instant case. He further argues to the effect that even if the sloped surface is treated as a side (rather than the top), McVey does not state in which direction his wheel rotates and therefore there is no indication of whether the "leading side face" or the "trailing face" will be steeply pitched.

Taking the second argument first, it is immaterial in which direction McVey's wheel rotates, since what is involved here is not a method claim but an apparatus claim which is not limited as to the direction of rotation. If, in fact, McVey has the equivalent of a steep face and gradually sloping face, this is sufficient for purposes of this case. Be this as it may, McVey's disclosure clearly indicates that the third of the "top" edge which is not beveled is adjacent the leading face. Note the references in the disclosure to "the cutting area 24" and to the fact that an "intermittent *striking, or saw-tooth, action*" is effected. It is doubtful if a "striking" action could be effected if the sloping surface were on the leading side of the bar.

As to the first argument, it will be noted from figure 6 of McVey that what applicant refers to as the "top" surface of the bar actually consists of a horizontally disposed portion extending for one-third of the distance and a beveled portion extending the other two-thirds of the distance. From figures 2 and 3 (especially the latter) it may be seen that only approximately one-fifth, if that much, of the vertical extent of the bar is exposed beyond the periphery of McVey's wheel. The full effect of this is that the trailing edge of the sloping portion almost merges with the periphery of the wheel, leaving virtually no "steep" (or 90°) trailing side exposed. When this is compared to figure 5 of applicant, it will be seen that there is little difference between the two.

But were we to assume that so long as even the slightest portion of the trailing vertical side of McVey were exposed applicant's claims would not read literally on the McVey device, our conclusion would be the same. The reason for this is that there is nothing in the record to indicate that the elimination of this portion of the side [4] would result in new or unexpected results. The affidavits introduced by applicant are insufficient for this purpose. The first affidavit, applicant's own, merely purports to demonstrate that applicant's device is superior to that of Ross. Since Ross has been relied upon not to show the basic land and groove arrangement which is the essence of applicant's alleged invention, but only to show a "monolithic" contact wheel, this affidavit can serve no useful purpose here. The second affidavit, that of Seward, does not purport to show that applicant's device is superior to that shown by McVey. On the contrary, this affidavit sets forth results of comparisons with "various competitive products," "competitive prior art devices," "a standard serrated wheel of the prior art," "competitive wheels of the type heretofore commonly considered as most suitable for certain types of cutting operations," etc. Clearly, this affidavit is insufficient to show any superiority over the device of McVey. The rejection of claim 46 is accordingly affirmed.

---

4. Were this portion eliminated, the McVey bars and voids would be the full equivalent of an embodiment such as that shown in figure 5 of applicant.

Since claim 53 is broader than claim 46, it is rejected for the reasons set forth above.

Claim 47 differs from claim 46 only in that the angle of the lands and grooves is set forth as 45° to 60° instead of 10° to 85°. The board was of the opinion that the angularity of Herchenrider's grooves was within the range recited in this claim. The Solicitor additionally argues that the restricted range of 45° to 60° is non-critical in view of applicant's disclosure that such a range is used where the wheels are of a certain durometer hardness. Since the claims contain no limitations as to hardness, it is argued that the restricted range is not critical. We are of the opinion that both the foregoing arguments are well taken and accordingly affirm the rejection of this claim.

Since claim 54 is broader than claim 47, it is rejected for the reasons set forth in our discussion of that claim.

Claim 48 is identical to claim 46 except for the additional limitation that the ratio of land area to groove area at the extreme periphery of the wheel is "around 1:4." Since applicant's own disclosure indicates the lack of criticality in the ratio of land to groove area,[5] and since McVey expressly refers to the increase in "striking" effect with an increase in the "spacing" between the bars, this limitation is not deemed to define patentably over McVey. At best, the specific spacing used would seem to be a mere matter of choice.

Claim 49 does not differ from claim 46 except for the additional limitation that each land has a "rake" angle of 0° to 15° and a "clearance" angle of 10° to 85°. McVey shows a rake angle of 0°, and, as we have construed McVey's disclosure,[6] shows a "clearance" angle of what would seem to be approximately 10° to 15°. In any event, it has not been shown, that the specific "clearance" angle is critical. The

rejection of claim 49 is accordingly affirmed.

Claim 52 adds to claim 46 the limitation that the monolithic rim structure is "of yieldable material." This limitation is clearly met by McVey, who describes his bars as having "a resilient covering."

For the foregoing reasons, the rejection of all the claims on appeal is *affirmed*.

Affirmed.

RICH, Judge (concurring).

In spite of the apparent showing of the affidavits that appellant has acquired a certain degree of technical wisdom about how to improve abrasive belt backup wheel performance, I feel obliged to concur in the affirmance of the rejection of the claims.

As the affidavits, claims and arguments all show, appellant seeks a patent on a backup device or wheel characterized by a diagonally serrated peripheral surface comprising lands and grooves in which the lands have steeply pitched leading faces and more gradually sloped trailing faces. The apparent limitations of the claims do little to narrow them to less than this broad concept and it is, unfortunately for appellant, fully disclosed by McVey if we assume his wheel runs in the direction in which it was apparently intended to run.

While the McVey specification would seem to indicate that the patentee thought he would get an increased rate of cut by using the square sides of his bars (the equivalent of lands) rather than the sides which are so shaped as to meet the appealed claims, he also teaches that there are many other factors which affect rate of cut including land spacing and flexibility in particular. Optimum results in this art apparently depend on a nice balancing of several factors. Moreover, appellant's own tests show that *rate* of cut is a relative matter and that even his wheels which have an over all

---

5. Applicant's brief states that "this ratio can range from a wheel in which the ratio of land area to groove area is somewhat under 1:1 to an extreme condition under which the land is of practically zero or line width at the peripheral face of the land."

6. See our discussion with respect to claim 46.

performance superior to "Ross Type" wheels have a lower *initial* rate of cut.

Whatever refinements of design and attendant advantages appellant may have discovered, I fail to see how the appealed claims point them out in such a way as clearly to distinguish anything which can be regarded as patentable over the cited prior art.